Howard Hudson, Appellee, v. Slack Furniture
Company, Appellant.

Opinion filed March 2, 1943.

WHITNEL, BROWNING, LISTEMAN & WALKER, of East St. Louis, for appellant.

VIRGIL JACOBY, of Alton, and MACDONALD, MEYER & MEYER, of East St. Louis, for appellee.

MR. PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from a judgment of the city court of East St. Louis, in favor of Howard Hudson, appellee (hereinafter called plaintiff), as against the Slack Furniture Company, appellant (hereinafter called defendant), in the sum of $500. The action arose out of a libel suit brought by plaintiff against the Slack Furniture Company on a complaint in which plaintiff alleged, in substance, that he had purchased a stove from defendant on the instalment plan; that he was employed by the B. & O. Railroad Company; that the defendant, with full knowledge, maliciously intending to injure plaintiff in his employment, maliciously wrote and published a malicious libel in the form of a wage assignment on which defendant forged plaintiff's signature and which wage assignment was addressed to plaintiff's employer, the Railroad Company; that plaintiff's employer had a rule in force that wage assignments subjected employees to dismissal; that the exhibition of the forged wage assignment to plaintiff's employer and the demand for plaintiff's wages made on plaintiff's employer by defendant "intended to, and did, charge plaintiff as being unfit and as a person of no worth in his business obligations and employment"; and that by means thereof plaintiff was injured in his good name, reputation, credit, and employment, and that his position with the Railroad

Company was impaired, and that he fears the loss of his employment as the result thereof. By amendment during trial, plaintiff alleged specifically that he was required to expend certain sums of money in securing the release of the wage assignment, for meals, hotel bills, and automobile expenses. Those were the only items of special damage alleged in the complaint. The defendant, in its answer, denied the averments of the complaint, separately.

The evidence discloses that the plaintiff had worked for the Railroad Company as a freight agent and telegrapher, and was employed chiefly as a telegraph operator. In October of 1939 plaintiff purchased a stove from defendant on a conditional sales contract. He paid three monthly $5 instalments on the stove when the door of the stove broke as the result of what plaintiff contends were defective materials. Plaintiff stated that he wrote defendant three times about the defects and refused to make further payments until an adjustment on the defect was made. At the time of making the contract plaintiff signed a number of papers, but was positive he did not sign a wage assignment.

In April of 1940, the credit manager of the defendant company, called the plaintiff by long-distance telephone, demanding $15, and plaintiff told him he would not pay it until the stove was fixed, and the credit manager then told the plaintiff he had a wage assignment in with the general solicitor of the Railroad, and that he would let the assignment go through. The plaintiff replied that if he did he would sue the defendant company. Thereafter, the credit manager did turn in a wage assignment (which the evidence indicates was never signed by plaintiff), with plaintiff's signature apparently forged on it. The evidence shows that the Railroad Company notified the plaintiff thereof, and reprimanded him, and that plaintiff left his work to go to the defendant Company in East

St. Louis to get the assignment out of his employer's record.

When the plaintiff went to the Slack Furniture Company's store, the credit manager gave him a letter to the Railroad Company (which was requested by plaintiff), in which he stated that the assignment was due to a gross misunderstanding on the part of both plaintiff and the defendant company, and that plaintiff had purchased a stove, which later proved defective, and of which defendant had no knowledge, and that plaintiff's letters setting forth his complaint were either misfiled or lost in the mail, and that the defendant knew nothing about the fact that such complaint existed, and that the matter was all adjusted, and that it was hoped that the Railroad Company would not hold it against the plaintiff's record. Plaintiff was given a new stove door to replace the old one.

It was shown that plaintiff had made two trips to the defendant's store in East St. Louis, one from Mitchell, Indiana, and one from Bedford, Indiana, in the process of having the matter adjusted.

The Railroad Company had a rule that an employee would be dismissed if his wage assignment was served on the company. The rule was to the effect that upon the making of a first assignment of wages, an employee is to be warned, and if a second assignment is made, it will be sufficient cause for an employee's dismissal, unless, in either case, there are extenuating circumstances.

After plaintiff had paid the balance on the stove, and after the defective part had been replaced, plaintiff demanded the wage assignment which the credit manager claimed he had signed, but defendant was unable to produce any wage assignment which was signed by plaintiff, and it was shown that the wage assignment which was served on plaintiff's employer was not one which was signed by plaintiff. A number of exhibits were introduced by plaintiff, some of which

were communications between officials of the Railroad Company, which were identified solely by the plaintiff and introduced over objection of counsel for defendant. The only evidence of special damage, in accordance with the allegations of the complaint, was furnished by the testimony of plaintiff showing the expenses for himself to come to East St. Louis for the purpose of straightening out the matter, and the loss of one day's work in the taking of his deposition in the case. Plaintiff's wages were not at any time withheld by reason of the service of the wage assignment, and there was no showing in the record of any specific loss resulting to plaintiff on that account. Aside from the warning issued plaintiff from the officials of the Railroad Company, there is no specific showing of damage to plaintiff in his employment.

The defendant contends that the defendant's motion for a directed verdict offered at the close of all the evidence, and motion for judgment notwithstanding the verdict, should have been granted by the court, or that the motion for a new trial should have been granted, and, specifically, contends that there were improper and incompetent exhibits and other incompetent evidence in the record; that there was error in the giving and refusing of instructions; and that the verdict was excessive.

It will be noted that under the allegations of the complaint, plaintiff's action was a libel action and, on the basis of the evidence in the record, it was apparent that plaintiff proceeded in this cause on the assumption that the publication of the false wage assignment was libelous *per se*.

The wage assignment to which reference was made was in the regular form for such assignments, by the terms of which the plaintiff purportedly assigned to the defendant company 25 per cent of his earnings, by reason of his employment with the Railroad Company. None of the words of the wage assignment in and of

themselves were libelous, and did not impeach the honesty, integrity, virtue, or reputation of the plaintiff, nor was there anything in the wage assignment which, as plaintiff avers, charged plaintiff as being "unfit and a person of no worth in his business obligations and employment." The plaintiff was a telegrapher and it was not shown that the maintenance of good credit was essential or necessary to the performance of his duties as a telegrapher, in contrast to the situation, which obtains as to a merchant or trader, to whom credit is most essential. Plaintiff had a legal right to secure his indebtedness with a wage assignment. To publish falsely that he had done so could not have imputed to him any dishonesty or reflected upon plaintiff in his position or skill as a telegrapher. We must conclude that the publication of the false wage assignment could not be libelous *per se,* so as to make it unnecessary to allege and prove special damage.

As indicated by this court, in *Wright v. F. W. Woolworth Co.,* 281 Ill. App. 495 (although the distinction between written words and spoken words is emphasized), the five classes of cases which, at common law, would give rise to a cause of action for their false utterance here, were (1) Words imputing to a party the commission of a criminal offense; (2) Words which impute that the party is infected with some contagious disease, where, if the accusation be true, it would exclude the party from society; (3) Defamatory words which impute to the party unfitness to perform the duties of an office or employment for profit, or want of integrity in the discharge of duties of such office or employment; (4) Defamatory words which prejudice such party in his or her profession or trade; and (5) Defamatory words which, though not in themselves actionable, occasion the parties special damage. As indicated in that case, the common-law rule has been thoroughly established, and as such,

is the law of this State, except where it has been changed by statute (in the Slander and Libel Act which has included certain types of accusations which are not applicable to the facts in the case before us). In the instant case the alleged libel could only be included in the fourth or fifth categories referred to.

Before the publication of the wage assignment could be considered as libelous *per se,* such words must have prejudiced the party in his profession or trade. In Nowell's Libel and Slander, Fourth Edition, at page 162, an illustration is set forth which clarifies this type of libel. It is stated, for example, "Mr. Brown says of Mr. Smith, a carpenter, that he is incapable of making up a physician's prescription, and he also says of Mr. Jones, a chemist and a druggist, that he cannot construct a door or mend a table. Obviously, such assertions convey no injurious imputations to the parties of whom they are made. But, if they are employed inversely to the parties in question, the words may have the effect of seriously damaging each in his own particular trade or employment; that is, touch him in his trade, office, or profession." It cannot be stated in the instant case that the publication of a wage assignment which implies the failure of plaintiff to pay his debts, affects or touches him in his capacity as a telegrapher.

In *Holtz v. National Furniture Co.,* 57 F. (2d) 446, the court, in passing upon a libel action based upon a letter and telegram to a buyer, setting out the failure of the plaintiff in that case to pay a debt, it is stated (at page 447), "A writing concerning a person who is not a trader or a merchant, or engaged in an occupation where credit is essential to success, charging that he failed to pay a just debt, is not libelous *per se,* and a declaration in libel making such an allegation, without alleging special damages, is demurrable. As respects a charge of failure to pay debts, without any imputation of insolvency, it seems to be settled that a

writing containing a mere statement that a person who is not a trader or merchant, or engaged in any vocation wherein credit is necessary for the proper and effectual conduct of his business, owes a debt and refuses to pay, or owes a debt which is long past due, is not libelous *per se,* and does not render the author or publisher of such statement liable, without proof of special damages. Such a statement does not, in a legal sense, necessarily expose the person of whom it is said to public hatred, contempt, or ridicule, nor does it degrade him in society, lessen him in public esteem, or lower him in the confidence of the community.'' In that case, the case of *Stannard v. Wilcox & Gibbs Sewing Mach. Co.,* 118 Md. 151, 84 Atl. 335, 42 L.R.A. (N. S.) 515, was cited with approval. In the Maryland case, the court held that a letter written to an employer of a plaintiff, referring to the failure to pay a debt owing the defendant, was not libelous *per se,* so as to entitle plaintiff to recover without proof of special damage. It was emphasized that the plaintiff in such case had no occasion for the use of credit, or that his credit was not in any way impaired or affected, and that the statement in no way related to the manner of his performance of his duties in his work, and that it was not shown that he lost his position as the result of the latter, ''in which case he would have sustained special damage.''

It is, therefore, apparent that the publication of the wage assignment was not libelous *per se,* and that a recovery, under the facts, in a libel action, must be based upon proof of special damage.

We are unable to discover from the record, any proof of special damage to plaintiff, other than certain expenses sustained by plaintiff as the result of his trips to East St. Louis, as hereinbefore referred to. As a consequence, we cannot conclude that plaintiff suffered damages in the sum of $500, which proximately resulted from defendant's wrongful conduct.

It therefore follows that the verdict of $500, based upon the allegations of the complaint and the evidence in this case, was excessive.

A number of other grounds for reversal are set forth by the defendant herein, but in view of what we have stated, it will not be necessary that we discuss such grounds in detail.

What we have said with reference to the matters before us is to be applied only to the facts of this case and to matters relating to a libel action. The defendant company in the use of a false wage assignment was guilty of tortious conduct toward plaintiff, which can form the basis of a cause of action in favor of plaintiff and against defendant, and would, if plaintiff is able to prove that such conduct occasioned damage to him or that the conduct was of such character as to justify punitive damages, entitle plaintiff to recover all damages resulting from such tortious conduct on the part of the defendant.

In accordance with the views which are herein expressed, and by reason of the fact that the verdict in this cause cannot be sustained under the complaint, and the evidence herein, this cause will be reversed and remanded for new trial, to the city court of East St. Louis.

*Reversed and remanded.*