J. Austin Latimer et al., Appellants, v. The Chicago Daily News, Inc., Appellee.

Gen. No. 43,936.

296

Opinion filed February 3, 1947.   Released for publication
February 17, 1947.

MAXIMILIAN J. ST. GEORGE and ALBERT W. DILLING, both of Chicago, for appellants.

BELL, BOYD & MARSHALL, of Chicago, for appellee; THOMAS L. MARSHALL and CHARLES T. MARTIN, JR., both of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

This appeal is by plaintiffs from an order of the superior court dismissing their amended complaint for libel against defendant and entering judgment for defendant.

The amended complaint, *inter alia,* alleged that an indictment had been returned in the district court of the United States for the District of Columbia against Joseph E. McWilliams, et al., thirty defendants in all, for conspiracy under section 11 of the United States Code to violate section 9 of said code, commonly termed "sedition," and charged them with an intent to interfere with, impair and influence the loyalty, morale, and discipline, of the military and naval forces of the United States; that said indictment came on for trial on April 17, 1944, and was heard from day to day until the grievances herein complained of against defendant, occurring on June 9, 1944; that said defendants were represented by twenty-three lawyers, including plaintiffs, nineteen of whom were appointed by the court to defend certain of said defendants on trial,

six of the plaintiffs being among the number so appointed; that the plaintiffs, nine in number, were the attorneys among the group of twenty-three lawyers representing various defendants upon said trial; that defendant on June 9, 1944, published in its newspaper, The Chicago Daily News, an article entitled "Capital Sedition Trial Shows True Despicable Nature of Fascism." The portion of the article alleged to be libelous against the plaintiffs refers to the observation by defendant's reporter attending the trial, as a trial "where the scum of political gangsterdom in this country are represented by as craven a group of lawyers as I've seen, not excluding the nickel and dime shysters who used to hang around the racket court on S. State St. as staff attorneys for the gambling and vice syndicate."

The usual form of innuendo, in the complaint charges that the language quoted refers to the plaintiffs. It is contended that, the article in question is libelous *per se,* plaintiffs being in the group of lawyers referred to in the language quoted, and that under such circumstances, all or any of the group of lawyers involved had a right of action.

The defendant's theory is that none of the plaintiffs are identified in the group, and that no right of action accrues to any individual not named in the article or identified therein with certainty.

██ ██ We have considered the several questions raised by the plaintiffs and regard the controlling question to be, whether or not a derogatory article, written about a group, permits a right of action to one or more of the group who are not identified in the article, if the article cannot be said with certainty to include all in the group. In determining whether the article in question clearly includes all of the group referred to, we must consider the article in its entirety and not merely that portion of the article above quoted and relied upon to be libelous *per se.* The article states that the reporter writing it had been in attend-

ance several weeks upon the sedition trial in Washington, where ''the scum of political gangsterdom . . . are represented by as craven a group of lawyers . . . .'' This language, standing alone, does not indicate which of the defendants he regarded as ''the scum.'' Which of the lawyers represented those particular defendants is not clear nor are they identified in any way. When read in connection with the further language in the article—''There are despicable characters among the defendants''—it would clearly indicate that the writer did not mean to brand all of the defendants as ''despicable'' and did not intend to refer to all of the defendants as ''the scum of political gangsterdom.'' If, then, all of the defendants were not included in the characterization of ''scum,'' we cannot with any more certainty determine who were the lawyers representing the defendants included in that term. That is not clear from any of the language in the article and cannot be held applicable or referable to any of the plaintiffs in the instant case.

The indicated controlling question upon this record has not before been passed upon by courts of review in this State, but ample authority may be found in other jurisdictions, which sustains the position of defendant that an article such as this, directed against a group but not deemed to include all constituent members of the group, does not give plaintiffs a right of action for libel. *Noral v. Hearst Publications, Inc.*, 40 Cal. App. (2d) 348, 104 P. (2d) 860; *Service Parking Corp. v. Washington Times Co.*, 92 F. (2d) 502; *Sumner v. Buel*, 12 Johnson 475 (N. Y.). No innuendo, under such circumstances, can render certain the identity of the plaintiffs, which is otherwise uncertain in the article. *Williams v. Journal Co.*, 211 Wis. 362, 247 N. W. 435; Newell on Slander and Libel (4th Ed., 1924), §§ 200, 220; *Noral v. Hearst Publications, Inc.*, 40 Cal. App. (2d) 348, 104 P. (2d) 860.

Whether the article is susceptible of the construction which the plaintiffs claim for it is a question

of law for the court. *Life Printing & Publishing Co. v. Marshall Field,* 324 Ill. App. 254; *Kulesza v. Chicago Daily News, Inc.,* 311 Ill. App. 117.

The cases cited by plaintiffs, where a group is involved in an article claimed to be libelous, are not in point, since in each of those cases it is made clear that the article contains language clearly including every member of the group, something which is lacking in the article in the instant case.

We think the judgment of the superior court is correct, and it is accordingly affirmed.

*Affirmed.*

O'CONNOR, P. J., and NIEMEYER, J., concur.