JOHN J. VALENTINE, Plaintiff-Appellee, *v.* NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE *et al.,* Defendants, Appellants.

(No. 73-107;

Third District—December 31, 1973.

Cassidy, Cassidy & Mueller, of Peoria (John Cassidy, Jr., of counsel), for appellants.

W. Thomas Johnston, of Peoria, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Peoria County, Illinois, which allowed the plaintiff, John J. Valentine, compensatory damages of $5,000 and punitive damages of $10,000 after a jury verdict. The defendants, North American Company for Life and Health Insurance, a corporation, and Gerald Kaufman, an officer of that corporation, had been charged with slander.

The plaintiff since 1964 had been a full-time life insurance salesman. He had been very successful in his chosen occupation and for several years was a member of the Million Dollar Round Table. During the period from December of 1969 through August of 1970 he was general agent for the defendant insurance company in Peoria. During this period he also represented a number of other companies as agent.

During the time he had a general agency relationship with the defendant company, the plaintiff did business as the New Zealand Corporation. About April 1, 1970, the defendant company entered into a new agency agreement with New Zealand. About the same time, the defendant company executed a long-term lease for office space for the plaintiff. The plaintiff selected the furniture for the office, costing about $10,000 or $11,000, and the defendant company paid for this.

The agency failed to produce business for the defendant company as contemplated. Dissatisfaction arose. The plaintiff was notified by letter dated August 10, 1970, that his performance and production as agent for the defendant company were considered not satisfactory. The agency agreement contained a provision for termination on 30 days' notice, but

no such notice was given at this time. Then on Sunday, August 30, 1970, Kaufman, who was an assistant secretary of the defendant company and its director of sales administration, came to Peoria to terminate the agency at once and to arrange for subletting the office space.

On the following day, Monday, August 31, 1970, Kaufman got in touch with the plaintiff. Kaufman told him he was terminating the general agency, and asked him to vacate the office immediately. The plaintiff refused to do so. The next day, Tuesday, September 1, Kaufman went to the office and had the locks changed, and some time later he gave the plaintiff a key.

On Monday, August 31, Kaufman also went to see a real estate broker whom he knew, David Simons, to make arrangements for subletting the office space. The two of them discussed the terms of the subletting, the commission which would be earned, and the availability of the premises. Kaufman told Simons that the present tenant was the plaintiff, that the plaintiff was about to be put out and the locks on the door changed, and that Simons would then be supplied with a set of keys. Simon asked why the plaintiff was being put out. Kaufman responded according to Simons' testimony at the trial, in this way: "He said Mr. Valentine was a lousy agent."

Kaufman elaborated on this. Simons' testimony continued as follows: "Mr. Kaufman said that Mr. Valentine spent too much money for furniture; he did not devote his time to their company; he was spending his time in other endeavors, and he wasn't doing for them what he was supposed to."

Simons, who said he had "no great love" for the plaintiff and thought he would "burn him a little bit," told the plaintiff about the conversation. The plaintiff then filed this lawsuit, claiming that he was slandered by being described as a "lousy agent." The defendants contend that these words did not constitute slander per se; that even if they were slanderous, there was a conditional or qualified privilege to utter them; and that there was error in the instructions.

■■ The question with which we are first presented is whether Kaufman's saying the plaintiff was a "lousy agent" was slander per se, allowing the plaintiff to recover from the defendants without allegation or proof of special damages. It is established in Illinois that one of the four categories of slanderous utterances which are actionable per se and do not require proof of special damages is that type of statement which prejudices a person in his profession or trade. (*Whitby v. Associates Discount Corp.*, 59 Ill.App.2d 337, 340.) Thus a false statement that a person is incompetent in the business, calling, or profession in which he is engaged is held actionable without proof of special damages. (*Maclas-*

*key v. Mecartney,* 324 Ill.App. 498, 510.) Our inquiry must be whether the "lousy agent" remark falls within this category.

■ ■ "Words are actionable per se," it is said, "if they directly tend to the prejudice or injury of any person in his profession, trade, or business, whether the words are written or oral. * * * In order to make words, either written or spoken of or concerning a person engaged in a particular calling, actionable per se, they must be used of the person in relation to his or her occupation. Moreover, the charge must go so far as to impute some incapacity or lack of due qualification to engage in his trade or profession or some positive misconduct which will injuriously affect the incumbent in it * * *." (33A I.L.P. *Slander and Libel* § 27.) It has been similarly stated, "Defamatory words, to be actionable on the ground that they injure another in his business, trade or profession, must have reference thereto, either expressly or by necessary implication, and must tend to injure him therein with respect to important or essential features of the business, trade, or occupation; it is insufficient that they merely reflect on him as an individual." 50 Am.Jur.2d *Libel and Slander* § 104.

■■ With respect to the application of the foregoing, this is stated: "In determining the meaning of a communication, words, whether written or spoken, are to be construed together with their context. Words which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable." (Restatement of Torts § 563, comment d.) This principle has also been phrased as follows: "In determining the actionability of an oral or written imputation, the entire statement should be considered. * * * The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous, but from the context; all of the parts of the publication must be considered in order to ascertain the true meaning, and words are not to be given a meaning other than that which the context would show them to have." (50 Am.Jur.2d *Libel and Slander* § 141.) Allegedly defamatory words must be considered with what else was said. *Kulesza v. Chicago Daily News, Inc.,* 311 Ill.App. 117, 125; 53 C.J.S. *Libel and Slander* § 10b.

■■■ It is clear from the conversation between Kaufman and Simons that the expression "lousy agent" was not intended to mean that the plaintiff was not an exceptionally capable and successful insurance salesman. It was intended, rather, to characterize the plaintiff's representation of a particular principal, the defendant insurance company. The expression used was no more than a harsh judgment as to why the plaintiff's general agency was being terminated. The accompanying remarks explained that the particular agency relationship had not turned out to be profitable

to the defendant company for stated reasons, which might not exist another time to defeat another employing company's expectations. The expression "lousy agent" in its context did not necessarily imply either a "habitual course of similar conduct" as an agent or the "want of the qualities or skill" required in the plaintiff's calling as an insurance salesman. (Restatement of Torts § 573, comment d.) In context the statement made by Kaufman meant, simply, "We've had a lousy agency relationship." Under the innocent construction rule adopted in Illinois, we must find this restricted and circumscribed meaning to be the correct meaning to be ascribed to Kaufman's words, and must declare them to be nonactionable as a matter of law. *John v. Tribune Co.*, 24 Ill.2d 437, 442.

■■ Furthermore, the word "lousy" has various meanings and shades of meaning, but commonly serves as a general term of abuse. At common law words of abuse do not give a cause of action for slander. (53 C.J.S. *Libel and Slander* § 15.) In a number of Illinois cases utterances have been held not libelous per se, by reason of their being merely name-calling (*McGuire v. Jankiewicz*, 8 Ill.App.3d 319, 320; *Stanley v. Taylor*, 4 Ill.App.3d 98, 105; *Skolnick v. Nudelman*, 95 Ill.App.2d 293, 305.) The expression "lousy agent" was in this case evidently a term of abuse evoked by the disappointment felt over the plaintiff's representation of the defendant company, and, as name-calling, its use cannot be held actionable under the cases cited.

It is our opinion that the words "lousy agent" in the circumstances of this case were not actionable per se, and we therefore need not consider the questions raised as to privilege and the instructions, but must reverse the judgment of the Circuit Court of Peoria County.

Judgment reversed.

STOUDER and SCOTT, JJ., concur.