MELVIN SLOAN, Plaintiff-Appellant, *v.* JERRY L. HATTON *et al.*, Defendants-Appellees.

Fourth District   No. 14963

Opinion filed December 6, 1978.

Sam Erwin, Ltd., of Champaign (Gary R. Lietz, of counsel), for appellant.

Greanias, Booth, Greanias & Burton, of Decatur, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:

A case of libel?

No.

The defendant wrote and mailed a letter to Illinois Attorney General William J. Scott stating that the plaintiff "* * * was in the mobile home business and has since had to close his doors mainly because of poor management." The complaint before us alleged that this statement was libelous *per se*, and therefore plead no special damages.

A motion to dismiss was filed, alleging that such expression was not libelous *per se*. The trial court agreed and dismissed the case.

We also agree and we affirm.

The background—the record tells us—is essentially this: Sloan sent his nephew, Dennis Yates, to the Attorney General to file a complaint against the defendant. Yates complained that he had been overreached in the purchase of a mobile home, that defendant misled him about the monthly payment, lied to a bank officer, and sold him a mobile home that "has got so much wrong with it" that Yates wanted out. The defendant (a mobile home dealer) replied in a letter to the Attorney General describing

his effort to satisfy Yates' dissatisfaction. He twice sent a serviceman to the Yates home, and personally visited their mobile home with a representative from the financing bank. Hatton told the Attorney General that he had agreed to pay for the disputed underpinning, agreed to install air conditioning at his own expense, agreed to pay for new linoleum to be selected by Mrs. Yates, and, finally, offered to take the mobile home back and give Yates the profit on the sale of the trade-in.

This lawsuit is based on the last paragraph of defendant's lengthy letter:

> "Basically, I think the Yates's are nice people but they have an uncle by the name of Melvin Sloan, which is prodding them and advising them all the time as to what to do and what not to do. This same uncle was in the mobile home business and has since had to close his doors mainly because of poor management."

The end result is that this is a business defamation suit wherein one man's right to free speech must be balanced against the other man's right to protect his business reputation. We conclude that Illinois law accommodates both of these principles.

Let us see why.

■■ Free speech is not restricted to compliments. Were this not so there could be no verbal give and take, no meaningful exchange of ideas, and we would be forced to confine ourselves to platitudes and compliments. But members of a free society must be able to express candid opinions and make personal judgments. And those opinions and judgments may be harsh or critical—even abusive—yet still not subject the speaker or writer to civil liability. In *Byars v. Kolodziej* (1977), 48 Ill. App. 3d 1015, 363 N.E.2d 628, this court held that mere expressions of opinion are not always actionable. We put it this way in *Byars*:

> "It cannot be said that every expression of opinion touching a person's capabilities or qualifications constitutes a defamation no matter how much the complained of statement may injure the subject person in his own conception." 48 Ill. App. 3d 1015, 1017, 363 N.E.2d 628, 630.

(Also, mere words of abuse are generally not actionable. See 53 C.J.S. *Libel & Slander* §15 (1948).)

●■ The fundamental requirement of a libel *per se* case is a serious charge of incapacity or misconduct in words so obviously harmful that damage is a necessary consequence. In *Bontkowski v. Chicago Sun-Times* (1969), 115 Ill. App. 2d 229, 252 N.E.2d 689, the court said that the essence of a libel *per se* case is that the words must be so obviously and naturally hurtful to the person aggrieved that proof of their injurious character can be dispensed with.

And the words themselves must be heard or read within the context of the attendant circumstances and pertinent facts. The same words

uttered in one situation may be universally acknowledged as innocuous, but in another be unchallenged as amounting to libel or slander. Communication does not occur in a vacuum or a void—it is employed in the normal course of human relations, in social and commercial intercourse. Recognizing this truism, and to place this area of the law in realistic perspective, Illinois formally adopted the innocent construction rule in the case of *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105. The supreme court enunciated it thusly:

> "That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." 24 Ill. 2d 437, 442, 181 N.E.2d 105, 108.

This rule requires that the meaning of a statement be gathered not only from the words singled out, but from the context. (*Valentine v. North American Company For Life and Health Insurance* (1973), 16 Ill. App. 3d 277, 305 N.E.2d 746.) And the surrounding circumstances and the events that led to the utterance must be examined very closely and the words judged accordingly. *Stanley v. Taylor* (1972), 4 Ill. App. 3d 98, 278 N.E.2d 824.

Illinois courts have applied the innocent construction standard consistently and with logical predictability. For instance: A news story reported the keeper of a bawdy house had an alias identical with plaintiff's name and it was held non-actionable as a matter of law because the story did not under all possible constructions indicate plaintiff was the keeper (*John*); as a matter of law it was held that an insurance agent had not been libeled because he was described as a "lousy agent" (*Valentine*); a deputy circuit clerk was not libeled by being called a "political hack" (*Cooper v. Rockford Newspapers, Inc.* (1977), 50 Ill. App. 3d 247, 365 N.E.2d 744); a school principal had no cause of action for slander because he had been called not qualified to be a principal and a disgrace to his profession (*Stanley*); a business executive was not libeled by a story in a nationally circulated magazine that stated he was "no manager" (*Snead v. Forbes, Inc.* (1971), 2 Ill. App. 3d 22, 275 N.E.2d 746).

The *Stanley* case appears quite similar to the one at bench. That case involved a personal confrontation between a school teacher (Taylor) and her principal (Stanley) where the defendant used language which touched upon the plaintiff's professional qualifications. This court specifically noted that the plaintiff—whose action was grounded on the criticism he received—had himself criticized the defendant, and we recognized that one who criticizes must be willing to accept a little disparagement in the give and take that he precipitated.

Here, Sloan appears to have prompted the consumer fraud charge,

and in the course of his defense, Hatton gave Sloan the "verbal jab" which has triggered this lawsuit. In *Stanley*, where the teacher made a direct charge of professional incompetence to and about her principal (stating that he was "not qualified" to be a principal and that he was "a disgrace" to the profession), we applied the innocent construction rule, saying: "This is not a situation where defendant made a deliberate communication to someone other than plaintiff such as the superintendent of schools or a similar individual with the direct intention of doing injury to plaintiff in his position and profession. As the record shows, the outburst was spontaneous and made directly to plaintiff and was obviously more thoughtless than anything else, and a considered evil intention to defame is not easily imputed therefrom." 4 Ill. App. 3d 98, 105, 278 N.E.2d 824, 829.

In the case before us, only the Attorney General's office received the offending letter and it was plaintiff Sloan himself who brought that office into the arena of dispute. Hatton had made no communication at all to any business supervisor, business associate, employee, customer, or potential customer of the plaintiff. He conveyed his assessment of Sloan's commercial acumen only to the arm of government chosen by Sloan to act as his champion of consumer redress.

■■ Mr. Hatton's comment quoted here from his letter appears to have been prompted by frustration over the trouble Sloan had been giving him. To paraphrase what we said in *Stanley*, are we to say that any unguarded statement made in the heat of a business or commercial dispute, if it contains words affecting fitness for the business ability of a complainant, qualifies in all cases as libel *per se* and excuses the necessity of alleging and proving special damages, irrespective of the surrounding circumstances? This cannot be—and is not—the law in Illinois.

Against the contextual backdrop of surrounding circumstances here, the innocent construction rule seems to us dispositive of this appeal and the dismissal in the court below was clearly correct.

Affirmed.

TRAPP and GREEN, JJ., concur.