PAUL MAKIS, Plaintiff-Appellant, *v.* AREA PUBLICATIONS CORP. *et al.*, Defendants-Appellees.

First District (4th Division)    No. 78-1695

Opinion filed October 11, 1979.

ROMITI, J., dissenting.

James C. Hickman and Marilyn F. Longwell, both of Chicago, for appellant.

Reuben & Proctor, of Chicago (Don H. Reuben, Lawrence Gunnels, and Samuel Fifer, of counsel), for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, Paul Makis, instituted a libel action in the circuit court of Cook County against defendants, Area Publications Corp., d/b/a Suburban Tribune, Sue Treiman and William Guist. The trial court dismissed plaintiff's complaint with prejudice for failure to state a cause of action upon which relief could be granted.

The issue presented by plaintiff's appeal from the dismissal of his complaint is whether the allegedly libelous article published in the Suburban Tribune is susceptible of an innocent construction. We find that it is and affirm the trial court.

On October 25, 1976, the Suburban Tribune published an article entitled "Flight School Vanishes Into Thin Air." The article, in general, concerned the involvement of plaintiff and others in the operation of a sky sailing school. The complaint alleged that defendants maliciously and wrongfully published the article, that it was totally false with regard to plaintiff, and that as a result plaintiff lost his job as the manager of a sporting goods store and suffered injury to his reputation and credit.

The complaint did not specify the particular language in the article claimed to be libelous. In its entirety, the article states:

"Flight School Vanishes Into Thin Air

It could have been an accident, an argument, or just plain crime that prompted the owners of a sky sailing school in Mt. Prospect to take flight this summer.

Whatever the reasons, though, the three who owned and managed the Four Winds Sports School, 109 W. Prospect Av., left a number of people in the lurch when they shut down the storefront school and disappeared.

They borrowed $500 from a butcher down the street, ran up bills at the printing shop next door, and accepted hundreds of dollars from would-be sky sailors who paid their money thinking they'd get sky sailing lessons and never did. They also sold sky sailing equipment. The Mt. Prospect clerk's office is investigating the store, which officials say never applied for a village business license despite repeated warning letters. And a local resident, who paid $50 for hang gliding lessons she never received, has turned a complaint over to the Illinois attorney general's consumer protection bureau.

At least six persons, who paid $50 for the lessons, have lodged complaints with the village chamber of commerce, which in turn is working with the city clerk's office in tracking down the owners.

But nobody knows where the owners are. Three theories have been advanced to explain their sudden disappearance shortly after July 4.

Of the three co-owners of the shop, only one, Steven Naffziger, of 6-a Dundee Quarter in unincorporated Cook County near Palatine, still maintains a working phone number. Paul Makis of Hoffman Estates has had his phone disconnected. David Snook, of 120 Boardwalk, Elk Grove Village, has a 'malfunctioning phone,' according to Illinois Bell.

At the Sound Post Ltd., 101 W. Prospect, the manager said she thought the three shut down their business after one of them suffered a serious sky sailing accident. 'All I know is that one of the men was badly injured in an accident,' the store's manager said Friday. Snook reportedly suffered a broken neck in a 1974 skysailing crash.

William 'Bud' Barthel, owner of the People's Choice Meat Market, 105 W. Prospect, said the business was shut down because the owners had quarreled among themselves.

'The partnership was dissolved. They had a fight and quit,'

Barthel said. Barthel made a $500 personal loan to the business, but he says he's not worried about getting the money back.

'I have faith in human nature,' Barthel said. He added that he has directed complaints about the operation since then to the Mt. Prospect Chamber of Commerce.

But Kevin O'Donnell, deputy village clerk and an assistant village manager in Mt. Prospect, has a different theory.

'They could have planned a short-term tenure in the building, built up a business, and then left with the money,' he speculated.

O'Donnell said he pieced together the likely operating method the pair may have used from the complaints that came in.

According to O'Donnell, the store advertised its sky sailing lessons in local newspapers.

Interested patrons would be shown a short film on sky sailing and would talk informally with store owners about the sport. Then the three owners would sign up students for the $50 lessons. They promised ground school lessons, to be given at the store, and several tries in the air at Warren Dunes State Park near Sawyer, Mich.

Several persons told O'Donnell they received their 'ground school training,' in reality a short session devoted to familiarizing students with sky sailing equipment. But the sky sailing sessions never got off the ground.

Ann Graham of Schiller Park said she and her niece paid $50 each for the lessons but kept getting turned down for their sessions at the Warren Dunes. Finally the pair went back to Four Winds only to be told they they couldn't get the lessons because they hadn't scheduled for the class in advance.

'We went all the way out there, found the guys, and they still wouldn't give us the lessons,' Graham said. She turned over a complaint about the unfinished lessons to the attorney general's office last week. Mary and Lois Wollney, 140 S. Hawthorne Rd., Barrington, tried on two occasions to schedule the flying lessons and were turned down. Their teachers said the weather was 'wrong' for sky sailing.

'The first time, we started driving out there, and, just in case, we stopped and called at an oasis. They told us it was too windy out. It could have been there but it was beautiful here, not windy at all,' Lois Wollney said.

Neither the city clerk's office nor the sky sailing pupils, nor the neighboring storeowners are sure what happened to the three since the business closed down, about the second week in July. Only

Barthel reported seeing one of the owners, David Snook, since then.

But O'Donnell admits that the village has its hands tied in the matter. They don't have a business license they can pull on the store, can't find the proprietors, and haven't any complaints monetarily big enough to warrant filing criminal charges.

In July, O'Donnell said, a village policeman and later a building inspector found the office completely empty. Neighbors report the business was evicted from the store after the owners failed·to pay the rent.

Lois Wollney said the trio's sky-sailing antics may have reached to the Warren Dunes.

She said forest rangers at the dunes told her the three had rented a motel room and advertised sky sailing lessons at the dunes [giving their phone number in Mt. Prospect for interested persons] with a sign posted outside the room. Then, the rangers said, the three took off without paying for the room, which they had arranged to rent for a number of months, according to Wollney.

The Berrien County [Ind.] sheriff's police, which covers the Warren Dunes Area, said Friday they hadn't received any complaints about the Four Winds owners. Rangers in the area also said they hadn't heard of the scheme."

Defendants moved to dismiss the complaint pursuant to section 45 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45), on the grounds that the article was nonactionable as a matter of law under the rule of innocent construction and that the complaint failed to allege damages with sufficient particularity. Defendants' motion to dismiss was granted and a final order dismissing the action with prejudice was entered.

OPINION

■■ An action based on libel *per se* requires a serious charge of incapacity or misconduct in words so obviously and naturally hurtful that proof of their injurious character is dispensed with. (*Sloan v. Hatton* (1978), 66 Ill. App. 3d 41, 383 N.E.2d 259; *Bontkowski v. Chicago Sun-Times* (1969), 115 Ill. App. 2d 229, 252 N.E.2d 689.) A false statement is libelous *per se* if it imputes to the plaintiff (1) the commission of a crime; (2) infection with a loathsome disease; (3) unfitness or want of integrity in performing the duties of an office or employment; or (4) lack of ability in his business, trade or profession. *Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 371 N.E.2d 874.

■■ In determining whether the challenged language falls within one or more of these recognized categories, "the article is to be read as a whole

and the words given their natural and obvious meaning, * * * words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." (*John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105, 108, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148.) Termed the rule of innocent construction, this analysis requires that the meaning of the statement be gathered, not from isolated passages, but from the context of the language, stripped of innuendo and read in the best possible light. *Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 371 N.E.2d 874; see *Ware v. Carey* (1979), 75 Ill. App. 3d 906, 394 N.E.2d 690.

We decline plaintiff's challenge to abandon the rule of innocent construction, a rule that has been applied repeatedly by Illinois courts, as indicated in the following summary in *Sloan v. Hatton* (1978), 66 Ill. App. 3d 41, 43, 383 N.E.2d 259, 261:

"Illinois courts have applied the innocent construction standard consistently and with logical predictability. For instance: A news story reported the keeper of a bawdy house had an alias identical with plaintiff's name and it was held non-actionable as a matter of law because the story did not under all possible constructions indicate plaintiff was the keeper [citation]; as a matter of law it was held that an insurance agent had not been libeled because he was described as a 'lousy agent' [citation]; a deputy circuit clerk was not libeled by being called a 'political hack' [citation]; a school principal had no cause of action for slander because he had been called not qualified to be a principal and a disgrace to his profession [citation]; a business executive was not libeled by a story in a nationally circulated magazine that stated he was 'no manager' [citation]."

The appellate court is not the appropriate forum to seek a change in this well-established rule of law.

■■ Plaintiff contends that the Suburban Tribune article falsely imputes to him the commission of a crime, particularly fraud. Plaintiff has not specified the language upon which he relies, but from our reading of the article the only passage which arguably suggests criminal conduct is found in the following sentence: "It could have been an accident, an argument, or just plain crime that prompted the owners * * * to take flight this summer." Although to constitute libel *per se*, accusations need not state the commission of a crime in terms of art or with the particularity of an indictment (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 243 N.E.2d 217), the generic reference to crime in this case is susceptible of an innocent construction and nonactionable as a matter of law, because it is offered as only one of three possible explanations for the closing of the sky-sailing school. The word "crime"

is conditioned by the words "could have been" in the sentence. Read in the context of the entire article, the suggestion of criminal conduct is merely hypothetical and does not impute any act of specific criminal conduct to plaintiff. See *Homestead Realty Co. v. Stack* (1978), 57 Ill. App. 3d 575, 373 N.E.2d 429.

Plaintiff also contends that the article charges him with lack of ability or integrity in his business or trade. This contention is based generally on statements in the article suggesting that the sky-sailing school owners took money for lessons which they did not provide, failed to pay bills, closed the school, and disappeared. Again plaintiff does not point to any specific language to support his charge.

■■ ■ Allegations of outstanding debts and the failure of a business venture are neither necessarily injurious to a person's business reputation nor indicative of a lack of integrity in business dealings. (See *Lowther v. North Central College* (1978), 60 Ill. App. 3d 902, 377 N.E.2d 357.) The closing of the sky-sailing school is capable of several innocent explanations, including lack of business, insufficient capital or economic factors beyond the owners' control. (See *Wexler v. Chicago Tribune Co.* (1979), 69 Ill. App. 3d 610, 387 N.E.2d 892.) The Suburban Tribune article offers two equally plausible and reasonable explanations for the occurrence—an injury to one of the owners or a dispute among the business partners. Applying the rule of innocent construction, the closing of the sky-sailing school, albeit under questionable conditions, is susceptible to an innocent construction in keeping with the tenor and content of the article and, therefore, is nonactionable as a matter of law.

There being no allegations in the complaint to support special damages, the order of the circuit court dismissing plaintiff's complaint is affirmed. It is, therefore, unnecessary to reach other matters raised by defendants in support of the trial court's determination.

Affirmed.

JOHNSON, J., concurs.

Mr. JUSTICE ROMITI, dissenting:

Because I cannot agree that this article can be innocently construed and because I find no merit in defendants' other contentions in support of the trial court's judgment, I must respectfully dissent.

The reader of this article is told that the plaintiff owned and operated a business in which sky-sailing lessons were offered. A number of people paid for these lessons but never received them. Plaintiff and his partners

ran up bills at a printing shop, were evicted from their place of business for nonpayment of rent, and also failed to pay for a motel room they rented to conduct their business. One of three theories advanced to explain their subsequent disappearance was that they had *planned* to build up the business over a short term and then leave with the money. The inescapable implication of these statements is that plaintiff was not able to manage his business affairs, was irresponsible with his customers' money, and did not honor financial obligations incurred in his business. Moreover the theory advanced by the deputy clerk, accusing plaintiff of planning to build up the business and then leave with the money, imputes to him an act of dishonesty in his business affairs. The fact that his latter charge was only one of three theories advanced does not make it nonactionable. A positive assertion of defamatory matter is not required, it may be by insinuation, allusion, irony, or by a question and yet remain as defamatory as though positively and directly stated. (*Maclaskey v. Mecartney* (1944), 324 Ill. App. 498, 58 N.E.2d 630; 33A Ill. L. & Prac. *Slander and Libel* §12 (1970).) Furthermore, these other explanations in fact relate only to possible reasons for the closing of the business; they do not explain why the owners disappeared.

Although the parties on appeal debate the merits of the innocent-construction rule and plaintiff urges us to abandon it,[1] I do not find it to be applicable in this cause. The majority has cited our supreme court's summary of the rule in *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148. Although there may appear to be some conflict between giving words their natural and obvious meaning and at the same time finding them nonactionable if capable of being so read, that apparent conflict is satisfactorily resolved by construing the test to be whether the words are *reasonably* susceptible of an innocent construction. *Moricoli v. Schwartz* (1977), 46 Ill. App. 3d 481, 361 N.E.2d 74.

Here I find no ambiguity in the meaning of the statements previously discussed, nor is their meaning changed when viewed in the context of the entire article. Thus, this is not a case in which the innocent construction rule must be invoked to determine the effect of statements which are ambiguous. Indeed, defendants have not advanced such an innocent construction. Rather they contend that because the statements were not specifically about the behavior of plaintiff in his employment as regional

---

[1] Plaintiff contends that because a central purpose of the doctrine has been to mitigate the harsh effect of strict liability in defamation (Note, The Illinois Doctrine of Innocent Construction: A Minority of One, 30 U. Chi. L. Rev. 524 (1963)), it is no longer needed now that liability without fault in defamation has been ruled unconstitutional. (*Gertz v. Robert Welch, Inc.* (1974), 418 U. S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997; *Troman v. Wood* (1975), 62 Ill. 2d 184, 340 N.E.2d 292.) I agree with the majority that this contention can properly only be resolved by the Illinois Supreme Court.

manager of a retail sporting goods business they could not have prejudiced him in that occupation. I find no merit in this contention. The cases cited by defendants do not hold that defamatory statements prejudicing a plaintiff in his employment are nonactionable merely because they specifically related to another job held by him. Rather those cases involve determinations that no prejudice to the plaintiff in his employment resulted because the defamation did not affect plaintiff's job abilities (*Hudson v. Slack Furniture Co.* (1943), 318 Ill. App. 15, 47 N.E.2d 502 (ability of telegraph operator to pay his personal bills); *Hambric v. Field Enterprises, Inc.* (1964), 46 Ill. App. 2d 355, 196 N.E.2d 489 (plaintiff failed to allege injury to his business)), or related to his business but did not injure it (*Hambric* (alternative holding that report of strip-tease in bar was not injurious to such a business)), or was subject to an innocent construction (*Valentine v. North American Co. for Life & Health Insurance* (1974), 60 Ill. 2d 168, 328 N.E.2d 265 ("lousy agent" could have merely described unsatisfactory agency relationship); *Wexler v. Chicago Tribune Co.* (1979), 69 Ill. App. 3d 610, 387 N.E.2d 892 (statement that client's fortune, managed by attorney, had dwindled not necessarily statement that loss attributable to the attorney)).

In *Cobbs v. Chicago Defender* (1941), 308 Ill. App. 55, 57, 31 N.E.2d 323, a newspaper reported that a minister was being investigated concerning an "'unsavory incident of serious proportions.'" There was no indication that the incident specifically arose out of his activities as a minister, but the court noted the importance to a minister of having a spotless reputation and thus found the article libelous per se. This is illustrative of the purpose of making this category of defamation actionable per se, to protect business reputation. To distinguish between two defamatory statements which prejudice one in his employment merely because one concerned actions arising out of that specific employment and the other concerned another business activity would be contrary to this protective purpose.

> "It is not necessary that the defamer refer to the other as engaged in the particular profession or calling in question. It is enough if the statement is of a character to be particularly disparaging of one engaged in such an occupation * * *." (Restatement (Second) of Torts, Explanatory Notes §573, comment e, at 194 (1977).)"

Just as a spotless personal reputation is of professional importance to a minister, so is a reputation for honest business dealings and responsibility in financial matters towards customers and creditors important to one engaged in business. This article imputing irresponsibility with customers' money, failure to honor business debts, and dishonest professional behavior in one business enterprise owned and operated by the plaintiff was per se libelous of him in his employment as a regional manager of

another business. It is clearly distinguishable from the articles found nonlibelous in *Lowther v. North Central College* (1978), 60 Ill. App. 3d 902, 377 N.E.2d 357, a case cited by the majority. In *Lowther* the plaintiff was a college professor of psychology who sued for libel on the basis of articles stating that she was fired from her tenured position because a research foundation that she ran had failed to pay its rent to the college and had issued bad checks (later made good), signed by her, to the college. Plaintiff's suit was based on alleged injury to her professional reputation as a *teacher* and the court found that her "financial embarrassment" did not indicate any professional incompetence. In this cause the allegations concern the behavior of a businessman in his management of another business venture.

The majority opinion provides several possible explanations for the closing of the flight school. But these explanations do not relate to the specific allegations in the article concerning plaintiff's disappearance and failure to pay debts and meet business obligations with no explanation offered by him to the affected parties. Accordingly, I cannot agree with the majority that the trial court's judgment should be affirmed on the basis of the innocent-construction rule.

But defendants contend that because plaintiff was one of three owners named in the article no wrongdoing can be directly attributed to him from that article, citing *Latimer v. Chicago Daily News, Inc.* (1947), 330 Ill. App. 295, 71 N.E.2d 553. In *Latimer* 23 lawyers had represented a total of 30 defendants on Federal sedition charges. A published report of the trial spoke of "the scum of political gangsterdom" being represented by a group of lawyers described as "craven." (*Latimer*, 330 Ill. App. 295, 297, 71 N.E.2d 553.) Later in the article it was stated that there were "despicable characters among the defendants." (*Latimer*, 330 Ill. App. 295, 298, 71 N.E.2d 553.) The court held that in this context it was unclear whether the language referred to all of the lawyers in the group, thus distinguishing those cases in which an article clearly referred to every group member. Defendants do not appear to contest that defamation of a group may be applicable to individual members of a group where it can be shown that the words applied to every member of the group. (*Crosby v. Time, Inc.* (7th Cir. 1958), 254 F. 2d 927.) And the burden is much easier where very small groups are involved. (Prosser, Torts §111, at 749-751 (4th ed. 1971).) Here there were but three co-owners of a business, all were named in the article, and acts were repeatedly attributed to all of them in such terms as "the three owners," "the owners" and "the three." Thus, there is no doubt that statements in the article concerning the owners specifically referred to the plaintiff, and *Latimer* is distinguishable on that basis.

Defendants also claim the privilege of "neutral reportage"

formulated in *Edwards v. National Audubon Society* (2d Cir. 1977), 556 F. 2d 113, *cert. denied sub nom. Edwards v. New York Times Co.* (1977), 434 U.S. 1002, 54 L. Ed. 2d 498, 98 S. Ct. 647, and adopted by the Fourth District of this court in *Krauss v. Champaign News Gazette, Inc.* (1978), 59 Ill. App. 3d 745, 375 N.E.2d 1362. In *Edwards* the New York Times had printed charges made by members of the National Audubon Society that certain scientists were "paid liars." It was specified at trial and not contested on appeal that plaintiffs were public figures. The court held:

> "* * *when a responsible, prominent organization like the National Audubon Society makes serious charges against a public figure, the First Amendment protects the accurate and disinterested reporting of those charges, regardless of the reporter's private views regarding their validity." (556 F.2d 113, 120.)

The privilege was formulated as a limited one, to be defeated only upon proof that the publisher espoused or concurred in the charges or deliberately distorted the reporting in order to make a personal attack of his own on the plaintiff. The court found no such proof and also noted that there was no proof of actual malice which was also required to maintain the action because a public figure was involved. In *Krauss* the director of a county youth home who had designed and directed a drug program there claimed libel from an article alleging abuse in the program. Relying on *Edwards*, the court held that the doctrine of neutral reportage supported the dismissal of the action by the trial court:

> "Thus, the doctrine of neutral reportage gives bent to a privilege by the terms of which the press can publish items of information relating to public issues, personalities, or programs which need not be literally accurate." (59 Ill. App. 3d 745, 747, 375 N.E.2d 1362, 1363.)

This privilege was conditioned on the journalist reasonably believing that his story accurately conveyed the information asserted and on the assertion being made under circumstances wherein the assertion itself was newsworthy. The privilege could be defeated upon a showing that the story was deliberately distorted to launch personal attack. As an alternative basis for affirming the dismissal the court found the article nonactionable under the innocent-construction rule.

These cases are distinguishable from the cause before us in one crucial detail; we are not concerned here with a public figure or an issue of public concern. For defendants to claim that the matter was newsworthy and of legitimate public concern is insufficient to establish the privilege. This was not an issue with significant public health ramifications as in *Edwards*, nor did it concern the performance of a public employee in a public social service program, as was the case in

*Krauss.* At issue are essentially private complaints concerning a small business enterprise. I thus do not find the doctrine of neutral reportage applicable. Furthermore, the continuing validity of this doctrine is questionable in the light of recent United States Supreme Court decisions which restrict the first amendment privilege invoked in *Edwards* and *Krauss* to cases where public figures or public officials are involved and which expressly hold that it is not sufficient if the defamation concerns private persons involved in matters of public or general concern. (*Wolston v. Reader's Digest Association* (1979), ___ U.S. ___, 61 L. Ed. 2d 450, 99 S. Ct. 2701; *Time, Inc. v. Firestone* (1976), 424 U.S. 448, 47 L. Ed. 2d 154, 96 S. Ct. 958; *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 74 S. Ct. 2997.) If comments about private persons which also involve matters of public interest are not to be accorded the more limited protection of the requirement that actual malice be established, it is doubtful that the broader protection of the *Edwards* neutral reportage doctrine is constitutionally required. Nor have defendants contended that such protection should be afforded as a matter of common law, independent of constitutional protections.

For the reasons set forth in this dissent, I would reverse the judgment of the trial court and remand the cause with instructions that plaintiff's complaint be reinstated.