115 Ill. App.2d 229 (1969)
252 N.E.2d 689
Thaddeus Bontkowski, Plaintiff-Appellant,
v.
Chicago Sun-Times and Field Enterprises, Inc., Defendants-Appellees.
Gen. No. 53,027.
Illinois Appellate Court  First District, Fourth Division.
September 17, 1969.
*230 Will Gierach, William R. Dunn, and Frank J. Kopecky, Jr., of Oak Lawn, for appellant.
A. Daniel Feldman and Peter C. John, of Chicago (Isham, Lincoln & Beale, of Chicago, of counsel), for appellees.
MR. JUSTICE STAMOS delivered the opinion of the court.
Plaintiff, Thaddeus Bontkowski, an attorney, brought a libel per se action against defendants Chicago Sun-Times and Marshall Field Enterprises, Inc. The defendants' motion to dismiss the complaint for failure to state a cause of action was sustained, and plaintiff appeals.
The complaint alleged that plaintiff is a person of good name, fame, and repute, held in high esteem by and *231 among his acquaintances and the general public; that plaintiff is a duly licensed attorney in the State of Illinois and is so engaged in the pursuit of his profession; that on or about August 14, 1966, in the city of Chicago, defendants maliciously and wrongfully composed and published a certain letter and accompanying editor's note in the "TV Prevue" section of the Chicago Sun-Times newspaper, "Voice of the Viewer's Column," to wit:
"MASON LOSES A CLIENT
"Dear Voice:
"I'm sure happy to hear that Perry (Raymond Burr) Mason won't be back in court next season.
"I'm an attorney myself and realize the show was intended to be dramatic, but I can't help laughing every time Mason wins a case.
"T. BONTKOWSKI
"(Editor's note) Sounds like you haven't been winning too many cases lately."
It was further alleged that both the letter and editor's note were written by an employee of defendants, one Dennis Smith, in pursuance of his duties compiling and editing "TV Prevue" of said newspaper; and that by reason of the foregoing, plaintiff was injured in his good name, reputation, employment and his professional competency as an attorney. Plaintiff complained that his sound judgment was impugned, and that he has been exposed to, and in fact suffered public contempt, ridicule, embarrassment and financial injury. Plaintiff denied writing the letter and alleged it was written by Smith, and further, that the editor's note was false and defendants knew, or by exercise of reasonable care, could and would have known the statements concerning plaintiff *232 were false, but that defendants failed to exercise reasonable care to ascertain the truth or falsity of the statements by making inquiry of plaintiff or otherwise, and by the composition, writing, and publishing of the letter and editor's note, defendants demonstrated actual malice, spite and ill will toward plaintiff. The complaint further alleged that the letter and editor's note were wholly false and libelous per se, and that plaintiff was greatly injured to his professional and personal reputation to plaintiff's damage in the sum of $500,000.
[1] By their motion to dismiss, defendants have admitted (for the purpose of the motion) the truth of all the material allegations properly pleaded in the complaint.
Since the complaint did not allege any special or actual damages, the issue before the court is whether the publication complained of imputes to plaintiff a want of the requisite qualifications to practice law and is thereby actionable as a libel per se.
[2] In Whitby v. Associates Discount Corp., 59 Ill. App.2d 337, 207 NE2d 482 (1965), the court stated that those classes of words held actionable per se in Illinois, i.e., without the showing of special damages, fall into the following categories:
"1. those imputing the commission of a criminal offense;
"2. those imputing infection with a communicable disease of any kind which, if true, would tend to exclude one from society;
"3. those imputing inability to perform or want of integrity in the discharge of duties of office or employment;
"4. those prejudicing a particular party in his profession or trade."
*233 These categories have been reiterated by Tunnell v. Edwardsville Intelligencer, Inc., 99 Ill. App.2d 1, 241 NE2d 28 (1968), revd on other grounds, 43 Ill.2d 239, 252 NE2d 538; and Coursey v. Greater Niles Tp. Pub. Corp., 82 Ill. App.2d 76, 227 NE2d 164 (1967); and affirmed by the Illinois Supreme Court in 40 Ill.2d 257, 239 NE2d 837 (1968).
Plaintiff contends that the case at bar is well within the fourth category, i.e., injury to the person in his business, trade or profession and cites Colmar-O'Meara v. Greater Niles Tp. Pub. Co., 13 Ill. App.2d 267, 141 NE2d 652 (1957), at page 270:
"Any statement published of an attorney at law with respect to his profession is actionable if it tends to injure or disgrace him as a member of his profession. Oral or written words which impute to him a want of the requisite qualifications to practice law or which charge him with dishonest or improper practices in the performance of his duties as an attorney are actionable per se."
Plaintiff contends that the fact an attorney writes a letter to a column for television viewers, in itself, is sufficient to hold the attorney up to public ridicule, scorn, and contempt, because attorneys being persons of sound judgment, dignified, discerning, reasonable, logical and mature would not do such a thing. Plaintiff also argues that his reputation as a competent and fit attorney has been completely annihilated by the mere appearance in defendants' newspaper of the letter bearing plaintiff's name. Plaintiff complains that he is made to appear to the reader to be incompetent and unfit as an attorney because of his lack of judgment and discretion, his lack of maturity, his naivete, his silliness, his apparent jealousy of Perry Mason and his passion for viewing television. The editor's comment, plaintiff contends, further specified *234 plaintiff's lack of competency to win cases, and the bogus "letter set up plaintiff's character and personality as one who deserved a big fall, and the editor's comment created the big fall."
Plaintiff also argues that the poor grammar, sentence construction, word usage and contractions found in the letter present plaintiff as a person devoid of any command of the language and project him as an incompetent attorney, thus embodying the very nature and essence of the libel per se alleged in the complaint.
[3, 4] In John v. Tribune Co., 24 Ill.2d 437, 181 NE2d 105 (1962), at page 442 the court held:
"We further believe the language in defendant's articles is not libelous of plaintiff when the innocent construction rule is consulted. That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law."
In Dilling v. Illinois Publishing & Printing Co., 340 Ill. App. 303, 91 NE2d 635 (1950), the court at page 306 said:
"The meaning of the words alleged to be libelous cannot be by innuendo extended beyond a reasonable construction. Innuendoes are not available to impute libel to an article which in itself is otherwise innocent."
[5] Plaintiff, however, erroneously contends that the foregoing "innocent construction" rule is only applicable and available to protect news media in the responsible reporting of news, as is the rule that holds that innuendo must be disregarded in determining whether printed material is libelous per se as an adjunct to protecting the freedom of the press. Plaintiff concludes by arguing that the bogus letter and editor's comment at bar should not be afforded the protection of either rule.
*235 In the following cases the "innocent construction" and "innuendo" rules were applied: Zeinfeld v. Hayes Freight Lines, Inc., 41 Ill.2d 345, 243 NE2d 217 (1969) (a letter from one employer to another); Whitby v. Associates Discount Corp., 59 Ill. App.2d 337, 340-341, 207 NE2d 482 (1965) (a written notice to a credit bureau); and Judge v. Rockford Memorial Hospital, 17 Ill. App.2d 365, 150 NE2d 202 (1958) (a letter to the Nurses' Professional Registry).
[6] The courts of Illinois have formulated a general definition of libel per se, and the decisions in the particular cases delineate the essence of the concept: words so obviously and naturally hurtful to the person aggrieved that proof of their injurious character can be, and is, dispensed with. Reed v. Albanese, 78 Ill. App.2d 53, 58, 223 NE2d 419 (1966); Cowper v. Vannier, 20 Ill. App.2d 499, 501, 156 NE2d 761 (1959).
[7] The letter appropriately observes that the Perry Mason show is not realistic, and the editor's comment is obviously a humorous reply and not an appraisal of plaintiff's reputation or professional ability. Plaintiff concedes that the publication was intended as a joke, but argues that an "attack" upon a lawyer's reputation, "even though done in a jocular manner, is extremely serious."
We do not find that the publication was an "attack" upon plaintiff's reputation, either professional or personal, nor an appraisal of the same. The publication may generate some amusement for plaintiff's friends and associates, but we cannot perceive where plaintiff's professional or personal reputation would be impaired or diminished. The publication does not, in our opinion, meet the requisite definition of libel per se as enunciated in the authorities cited herein.
The judgment is therefore affirmed.
Judgment affirmed.
ENGLISH and McNAMARA, JJ., concur.