BRIAN GALVIN *et al.,* Plaintiffs-Appellants, *v.* GERTRUDE GALLAGHER *et al.,* Defendants-Appellees.

First District (4th Division)   No. 78-2043

Opinion filed February 28, 1980.

O'Brien, Redding & Hyde, of Chicago (James M. Redding and Ivan R. Azeris, of counsel), for appellants.

H. Templeton Brown, John Bleveans, and Stanley J. Parzen, all of Mayer, Brown & Platt, of Chicago, for appellee Gertrude Gallagher.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This action was commenced when a complaint was filed in the circuit court of Cook County, alleging libel and intentional infliction of severe

emotional distress as the result of a newspaper article written and published by defendants. The trial court dismissed count I of the complaint and granted leave to amend count II. Plaintiffs amended count II of the complaint, and after a hearing the trial court dismissed count II. Plaintiffs appeal the orders dismissing counts I and II of their complaint. We affirm the trial court rulings.

The issues presented for review are (1) whether count I of the complaint stated a cause of action for libel, and (2) whether count II of the amended complaint stated a cause of action for intentional infliction of severe emotional distress.

On March 12, 1975, a newspaper article was written and published by the defendants, Gertrude Gallagher and Cresent Newspapers, Inc., in the Orland Park Herald. The article stated:

"Parent should be 'a real person'
By GERTRUDE GALLAGHER

Once again it has happened.

One of our area teenagers died last week of a drug overdose. A senior in a local public high school he was found dead in his bed by his mother when she returned home in the afternoon.

I knew him as a little boy. A happy-go-lucky child. Shoelaces trailing in the mud but always a smile on his face and a cheerful 'Hi, Mrs. Gallagher' for me.

He came from a well-to-do family in an exclusive section of homes. He seemed to have everything—swimming pool, guitars, you name it.

He also came from a broken home.

Heavy drug abuse among young people seems to be found where the family circle is fractured. It happens too often to be coincidental. Of seven cases of serious drug abuse among teens of which I have personal knowledge, all but one of the children came from homes where the parents were either divorced or separated.

Adolescence is a hard stage of life at best. Feelings of insecurity, ineffectiveness and inability make life a misery for a teenager. He goes from depression to exhilaration to depression again, even in normal circumstances. He's trying to grow up and be free, but at the same time he's fearful of the responsibility. He's a mixed up human who has a lot of growing to do even though he may be six feet tall.

And in this period of life when he most needs a steady rock to cling to, he finds a nest of domestic problems involving the very people who should be there to give him that mental and emotional security.

Is it any wonder he goes for instant relief from his troubles?

Where does he go for direction? Where does he find values? Where does he turn when he's consumed with a feeling of worthlessness? When he wishes he were dead? What or who gives him the confidence he needs?

Pills. Liquor. Questionable companions. Blot it all out, kid. Kill the pain for a little while. Feel big. Feel important. Feel free.

Too many parents just don't realize their obligation to their children doesn't stop with seeing they are fed, clothed and have the latest guitar or motorbike. Parenting is a hard job. It means a lot of time and care and unobtrusive supervision.

A lot of example and quiet insistence on values. It means an end to phoniness and hypocrisy from adults. It means saying 'no' when everyone else is saying 'be more permissive'. It means trying a heck of a lot harder to build a good marriage and stable home than many modern people are willing to do.

If I had any say in the matter one of the things I'd do is toss out a lot of these hokey family life curriculums in the schools in favor of a program that stressed ethics and moral values accepted by every faith; a sense of humor and adaptability; learning to give a lot and not expect a lot; learning what it means to be unselfish. I'd require that kids be taught early and repeatedly how to live with people even though the going is tough. I'd insist we quit emphasizing how to be sexually adjusted in marriage and just stress how to adjust.

In short, I'd teach them, 'Forget doing your own thing and start trying to do someone else's thing once in a while.'

Then maybe in a generation we'd have more people who would try harder to build a good marriage not only for their own sake but to provide the psychological support their children need in the trying teen years.

It's easy to conceive a child but it takes a real person to be a parent."

Plaintiffs' son, Barry Galvin, died on February 26, 1975. Plaintiffs received a letter of condolence, dated March 10, 1975, regarding the death of their son, from defendant Gallagher.

■■ In *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105, 108, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148, our supreme court defined the innocent-construction rule as follows:

"[T]he article is to be read as a whole and the words given their natural and obvious meaning, and [the rule] requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law."

This rule has consistently been applied by the courts in this State. *Valentine v. North American Co. for Life & Health Insurance* (1974), 60

Ill. 2d 168, 328 N.E.2d 265; *Wexler v. Chicago Tribune Co.* (1979), 69 Ill. App. 3d 610, 387 N.E.2d 892; *Sloan v. Hatton* (1978), 66 Ill. App. 3d 41, 383 N.E.2d 259.

■■ There is no general rule defining which words are defamatory and which are not; each case is dependent on its own facts. (*Korbar v. Hite* (1976), 43 Ill. App. 3d 636, 639, 357 N.E.2d 135, 137.) The meaning of the statement must be gathered from the context of the language of the publication, stripped of innuendo. *Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 265, 371 N.E.2d 874, 878.

*Dauw v. Field Enterprises, Inc.* (1979), 78 Ill. App. 3d 67, 71-72, 397 N.E.2d 41, recently stated how the rule operates:

> "Originally adopted in England as the doctrine of 'mitior sensus,' the rule is that when the words which form the heart of a defamation suit can be given two or more meanings, one of which is favorable and not defamatory, the court will construe the words in the favorable sense. [Citations.]
> ＊ ＊ ＊
> The innocent-construction rule insures that no article will be held libelous unless the editors know that the only reasonable interpretation which can be given to their article is defamatory.
> In operation, the rule requires that the headline and the body of the story at issue be read together."

Thus, when we apply the innocent-construction rule to a case, the article must be read as a whole. Opinions and judgments of a party may be critical or harsh, or even abusive, but still not subject the author to liability. (*Vee See Construction Co. v. Jensen & Halstead, Ltd.* (1979), 79 Ill. App. 3d 1084, 399 N.E.2d 278.) We hold as a matter of law that the article is not defamatory, and the trial court was correct in dismissing count I of the complaint for failing to state a cause of action.

Plaintiffs further argue that their amended complaint states a cause of action for intentional infliction of severe emotional distress. We disagree.

Plaintiffs cite *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157, as the leading case in the area of intentional infliction of severe emotional distress. The court in recognizing the tort placed restrictions on its use:

> "'[I]t is uniformly agreed that the determination of whether words or conduct are actionable in character is to be made on an objective rather than subjective standard, from common acceptation. The unwarranted intrusion must be calculated to cause "severe emotional distress" to a person of ordinary sensibilities, in the absence of special knowledge or notice. There is no inclination to include all instances of mere vulgarities, obviously intended as meaningless abusive expressions.'" (*Knierim*, at 86.)

In a more recent case, the restrictions on recovering for such tort actions have been more clearly defined. In quoting from the Restatement of Torts, the court in *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90, 360 N.E.2d 765, 767, stated: " '* * * Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency * * *.' "

■■ Applying these principles to the present case, we cannot find that the conduct of defendant Gallagher was "so outrageous" and "so extreme" as to go beyond the bounds of decency. After applying an objective test, we find the article merely states the writer's opinions regarding teenagers' problems with alcohol and drugs and some steps which she feels will help solve the problems.

Plaintiffs rely on two cases to support their position, *Hanke v. Global Van Lines, Inc.* (8th Cir. 1976), 533 F.2d 396 (withholding furniture for a period of 100 days), and *Johnson v. Woman's Hospital* (Tenn. App. 1975), 527 S.W.2d 133 (showing mother her dead child in jar of formaldehyde). But in these two cases, the conduct was so extreme and outrageous that it went beyond the bounds of decency.

We do not find the conduct of defendant Gallagher to be at all comparable to the cases plaintiffs cite. Plaintiffs did not state a cause of action for intentional infliction of severe emotional distress, and we conclude that the trial court was correct in its dismissal of count II of the amended complaint.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

JIGANTI and ROMITI, JJ., concur.