BRAVO REALTY, INC., Plaintiff-Appellant, *v.* COLUMBIA BROADCASTING SYSTEM, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 79-1386

Opinion filed May 14, 1980.

Robert A. Korenkiewicz, of Chicago, for appellant.

Reuben & Proctor, of Chicago (Don H. Reuben, Lawrence Gunnels, Samuel Fifer, and Michael Kahn, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Bravo Realty, Inc., instituted a libel action against defendants, Columbia Broadcasting System, Inc., Bob Faw, and Walter Jacobson, for statements made in a "focus report" televised on station WBBM-TV. The trial court granted defendants' motion for judgment on the pleadings, ruling that plaintiff's amended complaint failed to state a cause of action in libel as a matter of law. Plaintiff appeals.

Plaintiff is a licensed real estate brokerage firm located in the Marquette Park area of Chicago. It maintained two outdoor advertising billboards in the community. One billboard featured a cartoon drawing of a wooden outhouse and read, "The only house Bravo could never sell." The second sign depicted a naked man running, and its legend said, "When it comes to selling homes, we're streakers." Both advertisements displayed plaintiff's name and address.

On June 24, 1976, CBS televised a focus report narrated by Faw on station WBBM-TV during the 6 p.m. news program. An abbreviated version of this report was telecast during the 10 p.m. news. During the narration of both broadcasts, the video showed plaintiff's billboards, clearly identifying plaintiff's name and address. Plaintiff was not mentioned in the audio portion of either telecast.

The focus report addressed problems of housing and race relations in the changing Marquette Park community. The report consisted of news commentary and interviews with community residents. During the broadcasts, the subjects of "panic peddling" and "blockbusting" were discussed. The report detailed the panic peddling tactics of two real estate brokers explicitly named in the telecast, whose licenses were revoked or suspended. Faw stated that panic peddling was difficult to prove because the State regulatory department was understaffed and realtors "shrewdly hint or suggest rather than use language or tactics which are flagrantly illegal." Investment patterns and the practices of several lending institutions were also discussed. Faw commented that the

issue confronting the Marquette Park community was not race as much as the economics of racial change.

During the 6 p.m. telecast, plaintiff's billboards were shown while the following words were spoken:

"Ads like this are not illegal—but to residents here, they are unsettling, another reminder that the area is changing. Some sympathetic realtors have stopped advertising like this—and have quit soliciting homeowners. Others refuse to stop."

In the 10 p.m. report, there was a brief discussion about deteriorating and abandoned buildings in other integrated areas, and then Faw said, "And with that, realtors moved in to prey on the fears of the homeowners left behind." At this point, the billboard with the outhouse was shown, and the narration continued, "[T]elling them: everyone else is selling—and if you don't, you'll lose everything." Later in the broadcast, Faw said, "Proving which realtors are panic peddling is nearly impossible because those who do it are usually shrewd—." Then the billboard with the naked man was portrayed as the audio continued, "and the State Department which regulates realtors is badly understaffed."

Plaintiff's amended complaint alleged that defendants maliciously and wrongfully produced and presented a news report containing false and defamatory matter about plaintiff. Plaintiff complained that the photographic reproduction of its advertising signs, shown simultaneously with a derogatory narrative concerning the panic peddling and blockbusting tactics of realtors in the Marquette Park area, would lead viewers of the entire report to conclude that plaintiff was guilty of unscrupulous, unethical real estate practices. The amended complaint further charged that as a result of the false publication, plaintiff sustained great injury to its business and reputation. It sought damages in the amount of $1,000,000.

After filing an answer, defendants filed a motion for judgment on the pleadings alleging that the complaint failed to state a cause of action upon which relief could be granted. Defendants contended that the alleged defamatory language was nonactionable as a matter of law under the innocent construction rule; that the offending language was protected under the privileges of neutral reporting and fair comment; that the complaint failed to set forth specifically the verbatim language complained of; and that the complaint failed to plead with requisite particularity the items of monetary loss occasioned by the broadcasts.

Plaintiff filed a response and memorandum of law in opposition. Defendants filed a memorandum of law together with a verbatim transcript of the focus report. Pursuant to plaintiff's request, the transcript was supplemented with "out-takes," or descriptions of images appearing

on the screen as the commentator spoke. On June 5, 1979, having viewed the videotapes and having considered the pleadings, memoranda and arguments of counsel, the trial court, without giving reasons, ruled as a matter of law that the amended complaint failed to state a cause of action in libel against defendants. Accordingly, the court entered judgment for defendants.

We believe that the dispositive issue on appeal is whether the language complained of is susceptible of an innocent construction.

■■■ To determine whether a publication is libelous, Illinois courts apply the innocent construction rule. (See *Belmonte v. Rubin* (1979), 68 Ill. App. 3d 700, 386 N.E.2d 904; *Korbar v. Hite* (1976), 43 Ill. App. 3d 636, 357 N.E.2d 135, *cert. denied* (1977), 434 U.S. 837, 54 L. Ed. 2d 98, 98 S. Ct. 127.) The rule requires that publications "be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." (*John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148.) The meaning of the statement must be gathered not only from the words singled out, but from the context. (*Sloan v. Hatton* (1978), 66 Ill. App. 3d 41, 383 N.E.2d 259.) Moreover, the words must be read in their best possible sense. (*Wexler v. Chicago Tribune Co.* (1979), 69 Ill. App. 3d 610, 387 N.E.2d 892.) Whether the language complained of is susceptible of innocent construction is a question of law to be resolved by reading the statement "stripped of innuendo." (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 348, 243 N.E.2d 217.) The rule is applied not only to determine whether the words can be interpreted in a way which is nondefamatory, but also whether they can be construed in a way which does not relate them to the plaintiff. *Belmonte v. Rubin.*

■■ Plaintiff here contends that the offending language in the telecasts cannot be innocently construed and constitutes libel per se. A publication is libelous per se if it is false and so obviously and materially hurtful to the aggrieved party that proof of its injurious character can be, and is, dispensed with. (*Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 371 N.E.2d 874; *Bontkowski v. Chicago Sun-Times & Field Enterprises, Inc.* (1969), 115 Ill. App. 2d 229, 252 N.E.2d 689.) Among the categories of words which constitute libel per se are false statements which impute to the party the commission of a crime and those which prejudice a particular party in his profession. (*Weber v. Woods* (1975), 31 Ill. App. 3d 122, 334 N.E.2d 857; *Bontkowski v. Chicago Sun-Times.*) Plaintiff urges that the comments accompanying the visual shots of the billboard, taken in context, accuse plaintiff of committing the crime of unlawful solicitation

for the sale of real estate, commonly known as "blockbusting" or "panic peddling" (Ill. Rev. Stat. 1975, ch. 38, par. 70—51), and damage its reputation as a real estate broker.

■■ We have already set forth the words recited while plaintiff's billboards were displayed during the early telecast. Plaintiff maintains that when this passage is viewed within the context of the preceding commentary, "soliciting" connotes blockbusting and panic peddling. Plaintiff argues that these remarks, together with photographic reproductions of its advertisements, depict plaintiff as unsympathetic to the problems of community residents and imply that plaintiff continues to engage in unlawful solicitation of area homeowners.

Even assuming that solicitation was used here to mean blockbusting, we believe the offending language can be innocently construed. The phrase regarding solicitation is ambiguous in nature, and may be interpreted to refer to realtors other than plaintiff. There is no explicit language indicating that plaintiff engaged in any unlawful solicitation or unethical real estate practice. The reference to "advertising like this" suggests that plaintiff's billboards are illustrative of types of advertisements that reflect a changing neighborhood and which may be disturbing to community residents. At most, the remarks and photographs together express criticism of plaintiff for having used, at some time, that particular type of advertisement. Yet it is clear that opinions and judgments may be harsh, critical, or even abusive, and still not subject the speaker or writer to civil liability. (*Sloan v. Hatton* (1978), 66 Ill. App. 3d 41, 383 N.E.2d 259.) The commentary clearly states that the advertising signs shown are not illegal. This statement further clarifies that no illegal conduct is being imputed to plaintiff. See also *Homestead Realty Co. v. Stack* (1978), 57 Ill. App. 3d 575, 373 N.E.2d 429.

We also believe that the language in the 10 p.m. broadcast is susceptible of innocent construction. After a brief discussion about realtors preying on the fears of remaining homeowners, the outhouse sign was shown and the narrator commented, "[T]elling them: everyone else is selling—and if you don't, you'll lose everything." Plaintiff charges that this language describes panic peddling and accuses plaintiff of deceitful, dishonest, and unethical business activities, despite the fact that the billboard in no way conveys such message. The offending language is part of a general commentary upon some realtors' practices. When considered in context, the statement may be read to refer to realtors other than plaintiff. The brief visual juxtaposition of plaintiff's sign, without further comment linking plaintiff in particular to the described tactic, does not necessarily indicate that plaintiff participated in or condoned unlawful or unethical real estate practices. See also *Beresky v. Teschner* (1978), 64 Ill. App. 3d 848, 381 N.E.2d 979.

Plaintiff complains of additional remarks in the 10 p.m. telecast. Following comments concerning "shrewd" realtors and the difficulty of proving panic peddling, the "streaker" sign was shown and Faw said, "[A]nd the State Department which regulates realtors is badly understaffed." Plaintiff urges that the remark, along with the picture of plaintiff's billboard, when taken together, imply that plaintiff is a shrewd realtor, who, while breaking the law, knows how to avoid the consequences. This language, however, may be innocently construed as an account of enforcement problems and an understaffed regulatory agency rather than a derogatory comment impugning realtors in general or plaintiff in particular. The report did not suggest that plaintiff was involved with or was a target of the regulatory body. Merely identifying plaintiff's name and address during this discussion does not transform a comment about the agency into a disparaging remark about plaintiff. Without impermissible resort to innuendo, the language complained of does not reflect negatively on plaintiff's real estate practices or impugn its integrity. Accordingly, like the former statements, this language can be innocently construed.

This innocent interpretation is borne out by viewing the abbreviated report in its entirety. Such viewing reveals numerous instances where the video and audio portions are incongruous. A reasonable viewer could conclude that plaintiff's signs merely constituted background footage of the Marquette Park area and were not used to illustrate the accompanying comments. And there is no claim that the billboards themselves were represented inaccurately.

Plaintiff finally contends that within the context of a telecast which discussed blockbusting and reflected adversely on realtors, the mere display of its signs without any exculpatory remarks amounted to defamation. With the exception of two named realtors, real estate activities and practices were discussed generally in terms of "some" realtors. Such references are ambiguous and are susceptible of being read to refer to persons other than plaintiff. (See also *Belmonte v. Rubin* (1979), 68 Ill. App. 3d 700, 386 N.E.2d 904.) Nowhere during the entire broadcast is plaintiff mentioned directly or linked to illegal or unethical acts of other realtors operating in Marquette Park. Moreover, the brief time span in which its signs were shown demonstrates that plaintiff was not the primary focus of the report. Since, under the innocent construction rule, the comments are capable of being construed as referring to parties other than plaintiff, we consider the program an innocent publication with regard to plaintiff. Applying the principle of innocent construction, we hold that the trial court properly found as a matter of law that the amended complaint did not state a cause of action in libel against defendants.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

SIMON and RIZZI, JJ., concur.