HARRY LEVINSON, Plaintiff-Appellant, *v.* TIME, INCORPORATED, *et al.*, Defendants-Appellees.

First District (1st Division)    No. 79-2096

Opinion filed October 6, 1980.

Louis G. Davidson, John B. Davidson, and Sydney R. Marovitz, all of Chicago, for appellant.

Reuben & Proctor, of Chicago (Don H. Reuben, Lawrence Gunnels, and Samuel Fifer, of counsel), for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Harry Levinson (plaintiff) brought this action for libel against Time, Inc. (Time), National Broadcasting Co., Inc. (NBC), Columbia Broadcasting System, Inc. (CBS), David S. Jackson, Robert S. Walsh, and David Nelson (defendants). Jackson is the author of the allegedly libelous article which appeared in Time magazine. CBS and NBC are licensees of Chicago television stations. Walsh and Nelson respectively are station managers thereof. Defendants filed motions to dismiss plaintiff's second

amended complaint for legal insufficiency. (Ill. Rev. Stat. 1979, ch. 110, par. 45.) The trial court entered judgment for defendants. Plaintiff has appealed.

■■ In this situation, the well-pleaded allegations of the second amended complaint must be taken as true. (*Johnston v. City of Bloomington* (1979), 77 Ill. 2d 108, 111, 395 N.E.2d 549.) Also facts contained in exhibits appended to the second amended complaint, "which constitute part of the complaint" are similarly accepted as true. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 284, 402 N.E.2d 599.) The following is a summary of the important facts.

Plaintiff has "long conducted" a gem and jewelry business locally, nationally and world-wide. Plaintiff has "extensively advised and been consulted in" his field. He is not now and was never a "public officer or public figure."

On July 30, 1978, Time issued a press release summarizing an article slated by it for early publication, which contained allegedly libelous statements concerning plaintiff. Time also released the complete text of the article. The substance of the release and text was then aired on television in two broadcasts by CBS and three broadcasts by NBC. The article later appeared in Time magazine. The statements concerning plaintiff were "false, malicious, libelous, slanderous, and defamatory." They brought plaintiff into disrepute "and plaintiff's reputation, both as a citizen and as a jeweler, was thereby injured as was his standing in the community and in his business activities." All of this material appears from exhibits appended to plaintiff's second amended complaint.

All five broadcasts reported plaintiff's jewelry store was robbed of more than $1 million worth of goods. Plaintiff's "friend" was Tony "Big Tuna" Accardo, a mob boss. According to the broadcasts, Accardo ordered the gang that robbed plaintiff to return the goods. The gang took the goods to Accardo's house. Deciding they had been shortchanged, some of the gang members later broke into Accardo's house and recovered the goods. Six men, believed to be a part of the burglary gang, were found assassinated.

In addition, one of the CBS broadcasts stated:

> "*Time* magazine is reporting tonight that Chicago police think they have a link between Tony 'Big Tuna' Accardo and jewelry store owner Harry Levinson—a link that could have led to the death of six burglars. * * *. Police said that Levinson was not cooperative in their investigation. The reason, according to *Time* is that Levinson had a friend on the other side of the enforcement business * * *. A police informant told *Time* that Levinson complained to 'Big Tuna' who was sympathetic * * *."

The other CBS broadcast stated:

"There are new reports tonight tying a million-dollar jewelry heist and the owner of the store that was robbed in with a major crime syndicate figure and the murders of six thieves. *Time* magazine has published a story linking mob boss Tony Accardo and jewelry store owner Harry Levinson. When Levinson's near north jewelry store was robbed * * *, police said that Levinson was not particularly helpful. One detective said, 'He's the most uncooperative victim I've ever seen.' *Time* magazine's article says the reason Levinson was of so little help was that he had a friend on the inside * * *. Levinson complained to Big Tuna. The article said Accardo sympathized * * *."

One of the NBC broadcasts reported, "It seems Mafia boss Anthony 'Big Tuna' Accardo was a friend of the owner of the store that was robbed." The other two broadcasts stated, "the owner of Levinson's asked his friend, Anthony 'Big Tuna' Accardo, for help in recovering his goods." Plaintiff alleged various photographs of plaintiff and his jewelry store accompanied these reports on television.

The article appearing in *Time* stated:

"[T]he gang * * * stole more than $1 million worth of jewelry, silver and furs.

After the police discovered the burglary, the store's owner, Harry Levinson did little to help their investigation. Griped a detective on the case: 'He was the most uncooperative victim I've ever seen.' But Levinson happened to be acquainted with a prominent figure in a different sort of enforcement business, Big Tuna. Levinson complained, according to a police informant, about his misfortune. For reasons of his own, Big Tuna sympathized. An order soon went out from River Forest: return the swag. The gang reluctantly obeyed * * *."

The article was accompanied by a photograph of plaintiff's jewelry store which included two captions: "Levinson's jewelry store in Chicago, where the bloody tale began" and a portion of a statement ascribed to a police officer, " 'He was the most uncooperative victim I've ever seen.' "

In this court plaintiff contends the broadcasts and the article constitute libel per se and application of the innocent construction rule here is neither possible nor proper.

All libels may be classified as per se or per quod. The former category is excellently described in *Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 264, 371 N.E.2d 874, *appeal denied* (1978), 71 Ill. 2d 602:

"A writing, to be libellous per se, must contain a false statement which imputes to the plaintiff any of the following offensive categories: (1) the commission of a crime; (2) the infection with a

loathesome disease; (3) the unfitness or want of integrity in performing the duties of an office or employment; or (4) words which adversely reflect on a particular party's abilities in his business, trade or profession. *Bontkowski v. Chicago Sun-Times [and Field Enterprises, Inc.* (1969), 115 Ill. App. 2d 229, 252 N.E.2d 689]; *Whitby v. Associates Discount Corp.* (1965), 59 Ill. App. 2d 337, 207 N.E.2d 482."

In *Whitby v. Associates Discount Corp.* (1965), 59 Ill. App. 2d 337, 341, libel (and slander) per quod are defined:

"If the false words, by their plain, ordinary meaning, and without resort to innuendo, impute anything within the first four offensive categories, the slander is one per se requiring no allegation or proof of special damages. If, however, a construction of the words is necessary to demonstrate injurious meaning, the slander cannot be per se, for a defamation can never be per se if the words themselves are capable of innocent construction. [Citations.]"

It is apparent from an analysis of the second amended complaint that the first three categories of libel per se are not pertinent here. But, plaintiff urges strongly the second amended complaint amply alleges a violation of the fourth category above set out. In this regard we must note the disparity in language between *Bruck* and *Whitby*. *Whitby* uses the phrase "prejudicing a particular party in his profession or trade" (59 Ill. App. 2d 337, 340), in the fourth category. *Bruck* uses the words "adversely reflect on a particular party's abilities in his business" (56 Ill. App. 3d 260, 264). As a practical matter, we do not see a wide discrepancy between these two definitions. We note that *Bruck* cites *Whitby* in this regard. If there is any actual difference between them, we prefer to accept the definition stated by our most able colleagues in *Bruck*, some 13 years later than *Whitby*. We find *Bruck* quoted and the definition "lack of ability in his business" used to define the fourth category in *Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452, 456, 395 N.E.2d 1185.

In our opinion, even assuming a difference in the meaning of the language thus used, if we apply the *Bruck* and *Makis* definition, we must necessarily conclude we are not dealing with libel per se so that the second amended complaint states no cause of action. Conversely, if we apply the *Whitby* language, we are constrained to arrive at the same result. "In determining whether the challenged language falls within one or more of these recognized categories," of libel per se the courts follow the "rule of innocent construction." *Makis*, 77 Ill. App. 3d 452, 456-57.

■■ Thus, the next and indispensable step is a determination as to whether the language in all of the publications before us is actionable after application of the innocent construction rule. In *John v. Tribune Co.*

(1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148, the supreme court defined the innocent-construction rule:

> "That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law."

"The meaning of the statement must be gathered from the context of the language of the publication, stripped of innuendo." (*Galvin v. Gallagher* (1980), 81 Ill. App. 3d 927, 930, 401 N.E.2d 1243; *Makis*, 77 Ill. App. 3d 452, 457.) "Whether language is susceptible of an innocent construction in a libel action is a question of law for the court, * * *." *Bruck*, 56 Ill. App. 3d 260, 265.

Invoking this rule, we find nothing in the publications before us which is not susceptible of an innocent construction. To begin with, much of plaintiff's argument is based upon selection of isolated words or phrases. This is contrary to the rule which requires that "the article is to be read as a whole." (*John*, 24 Ill. 2d 437, 442.) Characterizing plaintiff as an acquaintance or friend of a "mob boss" does not itself defame plaintiff. The fact that plaintiff may have "complained" to or "asked for help" from a "mob boss" similarly does not necessarily defame plaintiff. Friendship and acquaintance in such a situation may well exist without mutual culpability. Plaintiff contends these statements associate him with criminal alliances and organized crime. However, the requirement that we consider all of the publications as a whole and employ the "natural and obvious meaning" of words prohibits a construction such as that espoused by plaintiff. (*John*, 24 Ill. 2d 437, 442.) Although plaintiff contends reports of his "uncooperative" behavior suggest immoral motives or actions, no such exegesis is possible since the statements must be read "stripped of innuendo." (*Galvin*, 81 Ill. App. 3d 927, 930.) Common sense and understanding tell us that a great number of people may be uncooperative with the police for a great variety of innocent reasons. The same analysis applies to the words "link" or "tying" between plaintiff and Accardo.

■■ We have carefully and painstakingly examined each and all of the publications referred to in the second amended complaint. The above comments are typical of those portions of the material which have been singled out by plaintiff as being libelous per se. It is our considered opinion that each and every one of these arguments by plaintiff's able counsel are completely rebutted by application of the rule of innocent construction. Furthermore, as above shown, the proper legal approach to this problem is not the examination of selected words or phrases. The problem is a construction of each of these publications as a whole, and in this situation we are required, and it is our duty, to consider that, "the

article is to be read as a whole and the words given their natural and obvious meaning" so that "words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." (*John*, 24 Ill. 2d 437, 442, and the many authorities there cited.) We must necessarily conclude the second amended complaint states no cause of action.

Plaintiff contends *Troman v. Wood* (1975), 62 Ill. 2d 184, 340 N.E.2d 292, makes application of the innocent construction rule a question of fact rather than one of law. In that case the court concluded as a "preliminary determination" (62 Ill. 2d 184, 189), that the reference to the plaintiff by name in a newspaper article and inclusion therein of a picture of a house identified as hers could not be innocently construed as a reference to anyone other than the plaintiff. The court specifically stated this "preliminary determination * * * is a question of law * * *." (62 Ill. 2d 184, 189.) Whether the article in *Troman* was in fact understood by readers to refer to plaintiff then became a question for the jury. This same distinction is pointed out in *Vee See Construction Co., Inc. v. Jensen & Halstead* (1979), 79 Ill. App. 3d 1084, 1087, 399 N.E.2d 278. But "[w]hether language is susceptible of an innocent construction * * * is a question of law for the court * * *." *Bruck*, 56 Ill. App. 3d 260, 265.

Plaintiff also contends *Troman* limited application of *John*, 24 Ill. 2d 437, only to situations in which the identity of the plaintiff is involved. We do not agree. The innocent construction rule of *John* is fully applicable here. See *Vee See Construction Co.*, 79 Ill. App. 3d 1084, 1086-88.

We will add that attempts to eliminate the innocent-construction rule have been consistently rejected by the courts of Illinois for many years in the past. Some of the pertinent authorities in this regard, cited without further elucidation, are *Kakuris v. Klein* (1980), 88 Ill. App. 3d 597, 410 N.E.2d 984; *Altman v. Amoco Oil Co.* (1980), 85 Ill. App. 3d 104, 107, 406 N.E.2d 142; *Bravo Realty, Inc. v. Columbia Broadcasting System, Inc.* (1980), 84 Ill. App. 3d 862, 865, 406 N.E.2d 61; *Adreani v. Hansen* (1980), 80 Ill. App. 3d 726, 728, 400 N.E.2d 679; *Vee See Construction Co.*, 79 Ill. App. 3d 1084, 1086-87; *Dauw v. Field Enterprises, Inc.* (1979), 78 Ill. App. 3d 67, 70-71, 397 N.E.2d 41; and *Makis*, 77 Ill. App. 3d 452, 457.

For these reasons, the judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and CAMPBELL, JJ., concur.