Lloyd D. PENNINGTON, Kimberly A. Pennington, and Jeremy D. Pennington, Plaintiffs,

v.

MEREDITH CORPORATION, Defendant.

No. 89-0814-CV-W-3.

United States District Court, W.D. Missouri, W.D.

May 6, 1991.

---

**416**

John R. Campbell, Jr., Loughlin, Johnson, Campbell & Martin, Kansas City, Mo., for plaintiffs.

Bernard J. Rhodes, William F. Ford, Gage & Tucker, Kansas City, Mo., for defendant.

## ORDER

ELMO B. HUNTER, Senior District Judge.

The jurisdiction of this case is based upon diversity of citizenship, hence, we must follow the substantive law of Missouri. Before this Court is Defendant's Motion for Summary Judgment or Motion to Dismiss. Fed.R.Civ.P. 56(c) states that "judgment sought shall be rendered forthwith if pleadings, depositions ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In deciding whether a submissible case has been made, this Court views the evidence in the light most favorable to the plaintiffs, giving them the benefit of all inferences which may be drawn from the evidence in support of their cause of action. *Hagler v. Democrat–News, Inc.,* 699 S.W.2d 96, 98 (Mo.App.1985). The material facts in this case are undisputed.

On June 21, 1989, KCTV–5 broadcast a one minute and thirty-five second report, during its 10:00 p.m. newscast, on a drug-related crime in a Kansas City neighborhood. In the broadcast, Thurman Mitchell made the following statement:

> Others told TV–5 News most of the trouble has been traced to just two drug-dealing juveniles and about a dozen suspected drug houses in the area.

As Robert Cushing stated the following, a picture of Plaintiffs' house was shown for approximately four seconds:

> And we have slides of homes that these boys are occupying; we are not revealing the names, we have given these names to the police.

Plaintiffs are a husband, wife and fourteen year old son. They allege that the above statements and photograph of their house "intimated and insinuated" that they were "involved in illegal activities." All three were deposed and testified that they were harassed and shunned by friends and neighbors because of the showing of their house during this broadcast.

█ Missouri recognizes a distinction between libel actionable per se and libel ac-

tionable per quod. Although the weight of scholarly commentary calls for this distinction's abolition, *see Henry v. Halliburton,* 690 S.W.2d 775, 779 (Mo.Banc 1985), this Court will not attempt to forge into new grounds to establish libel law for the State of Missouri.

■ Statements actionable per se are indisputably defamatory on their face, without the aid of extrinsic evidence, while statements actionable per quod are statements from which damage, by consent of men generally, flows as a natural consequence, and the Court may take judicial notice of that fact. 50 Am.Jur.2d, Libel and Slander, § 9, at 522–23. For an actionable claim of libel per quod under Missouri law, the plaintiff "must allege special damages." *Williams v. Gulf Coast Collection Agency Company,* 493 S.W.2d 367, 369–70 (Mo.App.1973). Plaintiffs "acknowledge that they have neither pleaded special damages nor do the transcripts of their depositions reflect that they have sustained any special damages," *see* Plaintiffs' Memorandum in Opposition to Dismiss or For Summary Judgment, thus summary judgment is clearly appropriate to the extent Plaintiffs' cause of action is based upon libel per quod.

■ A statement is an actionable claim of libel per se, under Missouri law, "only if, on its face, without resort to extrinsic facts, it is injurious to plaintiff's reputation.... [L]anguage is not libelous per se if it requires innuendo in order for the language to become libelous." *Wilman v. Dooner,* 770 S.W.2d 275, 278 (Mo. App.1989). This statement is defamatory, and thereby injurious, pursuant to *Wilman, supra,* "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts, § 559. It is for this Court to "determine whether a statement is capable of defamatory meaning and then the jury decides whether the words were so understood."

*Henry v. Halliburton,* 690 S.W.2d 775, 779 (Mo. banc 1985) *Hagler,* 699 S.W.2d at 98.

■ In determining whether the publication and the showing of their house for approximately four seconds on television are capable of defamatory meaning, the statements and showing of the house must be "unequivocally" actionable and the words used "should be construed in their most innocent sense." *Walker v. Kansas City Star Co.,* 406 S.W.2d 44, 51 (Mo.1966); *Hagler,* 699 S.W.2d at 98; and *L & L Marine Service, Inc. v. Insurance Co. of North America,* 796 F.2d 1032, 1037 (8th Cir.1986). Further, a statement is libelous per se only if the statement itself, without resort to any extrinsic facts, defames the plaintiff. *Langworthy v. Pulitzer Publishing Co.,* 368 S.W.2d 385, 388 (Mo.1963) and *Arthur v. Jablonow,* 665 S.W.2d 364, 366 (Mo.Ct.App.1984).

In this case, Plaintiffs' names were never mentioned during the broadcast, their names were never shown in a printed manner during the broadcast; their address was never given; and a picture of Plaintiffs' persona was never shown. Specifically, Plaintiffs claim that viewers, who knew they lived in the house shown in the still photo, interpreted the news segment as implicating them in illegal drug dealing.[1]

In *Hartman v. Meredith Corp.,* 638 F.Supp. 1015 (D.C.Kan.1986), the plaintiffs' complaint was dismissed where KCTV had broadcast a report concerning the arraignment of several men who were charged with illegal gambling. During the news segment, plaintiffs, who were the suspects' bail bondsmen, were shown while the anchor read the names of the persons charged. Plaintiffs sued, asserting that the showing of their pictures libeled them. Judge Saffels ruled that the broadcast showing their pictures and stating that certain men were charged with illegal gambling was not libelous per se. Judge Saffels reasoned that the broadcast did not mention plaintiffs' names and specifically

---

**1.** Plaintiffs' petition stated that the news segment "intimated and insinuated" that they were "involved" in the illegal drug business.

cited the ones charged with illegal gambling.

In this case, Plaintiffs' names were not cited, either. This case is even weaker than the *Hartman* case in that here only Plaintiffs' house was shown. Viewers had to see the house, recognize it as belonging to Plaintiffs, and then draw the causal connection between the house which might belong to Plaintiffs and the broadcast regarding illicit drugs.

There are a plethora of cases supporting this holding,[2] however, this Court will explain only one other case supporting its holding. In *Hopkins v. Taft Television and Radio Company, Inc.*, No. 85–1585–CV–W–8, slip op. at 3 (W.D.Mo. Oct. 3, 1986), Judge Stevens held that a televised report concerning ticket scalping in which the plaintiff was interviewed on television, specifically identified by his first name, and had his face shown during the interview was not libelous per se. Judge Stevens concluded that the "news report did not directly accuse plaintiff of 'scalping' tickets," and plaintiff's only claim was for libel per quod, because, "the report conveyed by innuendo the impression that plaintiff was in fact 'scalping' tickets." *Id.* Plaintiff's complaint was then dismissed for failure to sufficiently plead special damages, such as to have an actionable claim for libel per quod. *Id.* at 7.

It is not necessary for this Court to determine whether there is someone who knew that Plaintiffs lived in the house shown, and whether they could have been induced to believe that they were involved in illegal drugs. "Inducement" is defined as extrinsic facts that must be known by the reader, listener or viewer in order to understand that the publication is defamatory. "Innuendo" is defined as the connection between the published statement and the extrinsic facts, i.e., the implied meaning. *See Dietrich v. Pulitzer Publishing Co.*, 422 S.W.2d 330, 333–34 (Mo. 1968) and *see also Langworthy*, 368 S.W.2d at 388 and *Mitchell v. St. Louis Business Journal*, 689 S.W.2d 389, 390 (Mo.App. 1985).

Plaintiffs were not unequivocally identified in this broadcast. To implicate Plaintiffs in the illegal drug business, one would have to infer from the picture of the house and from the broadcaster's statements about drug houses that this house was a drug house. Additionally, one would have to know that this house was Plaintiffs' house.

In this case, there is absolutely no description and reference to Plaintiffs or to Plaintiffs' house. There is merely a four second showing of an unidentified house during the broadcast. The viewer would have to have extrinsic facts, i.e., knowledge of whose house the depicted house is, and innuendo would be required, i.e., the viewer would have to draw the connection between the house shown belonging to Plaintiffs and the published statement. Plaintiffs do not present a libel actionable per se case, inasmuch as "the aid of extrinsic facts" is required. *Hagler*, 699 S.W.2d at 98.

Accordingly, it is hereby ORDERED that Defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

---

2. *See, e.g., Fogel v. Forbes, Inc.*, 500 F.Supp. 1081 (E.D.Pa.1980); *Bravo Realty, Inc. v. Columbia Broadcasting System, Inc.*, 84 Ill.App.3d 862, 40 Ill.Dec. 360, 406 N.E.2d 61 (1980); and *Hagler*, 699 S.W.2d 96. In *Hagler*, the defendant newspaper published a photo of a sign identifying plaintiffs' house with a story detailing the arrest of several persons on illegal drug charges. Plaintiffs sued, alleging that the publication imputed them in the illegal drug business. *Id.* at 99. Several witnesses testified that when they saw the article and looked at the photographs, they thought the plaintiffs could have been involved. On cross-examination, defendant pointed out that the witnesses formulated their impression from the photograph and not from the text of the article itself. *Id.* The jury then awarded actual and punitive damages. *Id.* at 97. The Appellate Court reversed the trial court, holding that the statement and photograph did not constitute libel per se. *Id.* at 99. The Court noted that the article did not refer to plaintiffs by name and, in fact, referred to others by name. *Id.* The Court held that by construing "the allegedly libelous photograph and caption in the context of the whole article, its presence although unfortunate, does not constitute libel [actionable per se]." *Id.*